is submitted. We'll go to of the day, which is 24-7 of the Treasury. Take you We've got Mr. Hazel here for the appellants, Mr. Lee for the appellees. Mr. Hazel, whenever you're ready, no hurry. Good morning, your honors. May it please the court, Stephen Hazel for the government. The Corporate Transparency Act effectuates long-standing prohibitions on money laundering and other harmful transactions by regulating the businesses that can facilitate those transactions. For years, criminals have used anonymous corporations to conceal everything from tax evasion to terrorist financing. To reduce those anonymous transactions, Congress determined that reporting requirements were needed. Those requirements apply to the category of businesses that has authority to engage in transactions in their own names and thus to facilitate financial crimes. The CTA thus falls well within Congress's enumerated powers. These reporting requirements are part of a larger scheme, a larger federal scheme to prohibit money laundering. Everyone in this case agrees that prohibiting harmful finances within Congress's authority. Can I ask you just like sort of a blocking and tackling question about how we do these commerce clause and commerce clause-ish challenges? The parties have suggested to us that it should matter to us whether or not this is a single subject statute. And I'm just trying to figure out, so far as I can tell, this is like a Russian doll. It's like the Corporate Transparency Act is within the Anti-Money Laundering Act, which I think is within a National Defense Reauthorization Act. So how do you define the statute for purposes of whether or not this is a single subject act or not? Your Honor, I think what matters under Raich is less about sort of how formally this is nested, but rather how Congress understood what the statute would do. Is this effectuating a larger scheme of commercial regulation? Would a failure to regulate here undercut that sort of scheme? And that's clearly what's happening here in the enacted text of this statute. Congress determined this was needed to effectuate those kind of schemes. As Your Honor points out, it put this in a statute that was about broader anti-money laundering enforcement, and it's actually codified as part of the Bank Secrecy Act as well. So all of those indicators, I think, make clear that this really is part of a larger scheme. And the reason that Congress was focused on businesses with authority— On the larger scheme issue, it seems like, and maybe I'm wrong, but it seems like that only helps you if this is regulating commercial or economic activity. Like in Raich, for example, under the Commerce Clause, the reason why the Supreme Court said that you could regulate intrastate production of marijuana for personal use is because it had this effect on this sort of overall scheme to regulate the production of marijuana, commercial sale of marijuana. Here, it doesn't really seem like Congress is regulating economic or commercial activity. It's just criminal. It's just saying that— Well, I don't know. It just addressed that issue, I guess. So, Your Honor, if I understand the question, I mean, money laundering, of course, takes many different forms, and it's often intrastate commercial activity. Congress can plainly regulate that. The separate question of whether these corporations are sufficiently connected with commerce, I mean, we all obviously think that they are. Yeah, and I guess that's my point. Does your argument about the interrelationship of money laundering and the national security implications and things like that, does it matter for the success or failure of that argument whether we determine that the creation, what the district court said, whether the creation or the act of incorporation is economic or not? Does that make sense? I think those are independent arguments. I mean, one way that we win this case is by showing that these entities are connected with commerce. Another way is by showing, regardless of whether that's true, this is necessary to effectuate a broader scheme. Obviously, I guess the third way is that this is a facial challenge. And so, at a minimum, these plaintiffs themselves are engaged in economic activity and are within the commerce power. So, those, I think, are the three main bases that we win this case,  Just to be clear about the reason that Congress chose to focus on these corporations, the reason that they're useful is that they gain this authority to conduct their own economic transactions in their own names. That's why money launderers find them useful. That's the problem that Congress identified. That's why these reporting requirements were necessary. And this wasn't something that only Congress determined. The executive branch across multiple administrations has determined that these reporting requirements were necessary as well. 40 state attorneys general wrote a letter urging that these requirements be adopted. Judge Basher, with respect to your question about what's the connection between corporations and commerce, a couple of things on that point. It's not just that corporations normally engage in commerce, and we know that plaintiffs have 65,000 members. They haven't identified a single one that's not engaged in economic activity. It's that the whole point of forming a corporation is that you're getting this entity that can do economic activity in some form. Again, plaintiffs haven't identified any reason to create a corporation that doesn't involve some form of economic activity. Well, I guess in fairness, and maybe this goes cross cuts with the facial nature of the challenge, but in the briefing, they do repeatedly address the possibility, maybe you think it's hypothetical, but of the husband and wife who incorporate or LLC themselves so as to put their house in a blind trust or whatever. There is a possibility that you could incorporate without any sort of eye toward commercial activity, right? So, Your Honor, I think even that case would be within the commerce power, but we obviously don't need to win that one to win this facial challenge for the reasons that we've discussed. And I think this case is something like race if it involved a facial challenge brought by a business that sold marijuana commercially. That would be an easier case than race. The court could have said, look, we've got a plaintiff who's obviously within the commerce power. We also have a statutory scheme that is plainly directed at commercial activity. And that's the end of it. And we think all of those same rationales apply. So the commercial activity, I mean, to me, I think. So the district court said that this was not directed at commercial or economic activity because it's triggered by the act of incorporation itself. So it's the filing papers with the state. What do you say about that? So respectfully, I think the district court just misunderstood what this statute is regulating. These regulations apply to reporting companies. The bulk of those companies performed well before the reporting requirements began. They've been engaged in business for a long time. And so the typical entity is plainly engaged in commerce. You can see that in a number of other aspects of the statute as well. Foreign businesses are covered, not when they form someplace else, but when they start doing business in the United States. Congress also excluded various other categories of business that are already subject to other reporting requirements or that are certain inactive domestic businesses. All of that shows that what Congress was trying to get at here were the sorts of businesses that engage in economic activity and that could potentially facilitate these kind of economic crimes. And I just underscore that we know that Congress did a good job of designing this scheme because plaintiffs still, they have some hypotheticals and I'm happy to talk more about those. But plaintiffs still haven't identified any actual business that is not engaged in economic activity. I mean, it would have to be a business that engaged in no activity at all, right? I mean, because anything a business does is going to be economic. Businesses don't like write poetry or just, I mean, you know, listen to music. So it would have to be economic. I think that's right, Your Honor. In Judge Newsom's hypothetical, wouldn't that be economic activity if I create an LLC for the purpose of transferring my house, the ownership of my house into the LLC? I think that's right, Your Honor. That certainly sounds like an economic transaction to me. It may not be like interstate magnitude, but I mean, it's still an economic transaction. I think that's right. And obviously in the aggregate, those kinds of transactions would have interstate commerce implications. I mean, again, this plaintiffs have brought this as a facial challenge. They just have come nowhere near establishing the very high bar that the Supreme Court has set for those sorts of challenges. So what do you say, and we'll ask the other side, I'll ask the other side as well, but what do you say in response to their argument in the supplemental briefing that somehow enumerated powers challenges are just different? They're sort of somehow more fundamental. And so the normal facial challenge, the Salerno standard, whatever we want to call it these days, the net choice standard shouldn't apply. Your Honor, that's just not what this court has done. I mean, we've cited Page, we've cited Pugh. I mean, this court has applied the normal, you know, very onerous facial challenge standard again and again. They haven't identified any authority that would justify deviating from that. I mean, this is not a statute that's focused on some kind of non-economic local criminal activity. It's about corporations. It's about businesses as illustrated. Yeah, it seems like, and I want you to follow up on Judge Newsom's question. I mean, it seems like the standard, I want you to correct me on this, for a facial challenge to something being invalid, an invalid regulation of the Commerce Clause is to show that it doesn't regulate commercial activity or economic activity. And then, you know, so for example, in the Hobbs Act case, I forget the name of that case, but Lestat Pugh, for example, which I wrote, which was about another criminal activity. You could say, look, you know, that's this criminal act, assault, not economic activity. So you might win on facial challenge, but as long as there's like a jurisdictional hook in there, you lose on facial challenge, right? Here, it seems like they have to at least meet that first step of showing non-economic activity or non-commercial activity. I think that's right, Your Honor. I think Lopez and Morrison use the phrase a sufficient connection with commerce. So I think something potentially that is not itself commercial activity, but has the requisite connection can be within the Commerce Clause. I mean, that just seems like, I mean, anything could conceivably be connected to commerce, right? Well, Your Honor, Lopez and Morrison obviously focused on sort of the degree of attenuation. What's important in this case is that that's just not an issue for us, right? As we discussed a few moments ago, the reason that you create a corporation, the thing that corporations normally do, that's all commerce. So we're just, I mean, we're worlds apart from this concern about domestic crimes and local non-economic law enforcement. All right, Judge Jordan, do you have any questions for Mr. Hazel? Yes, I have one. Going forward, when are the corporate disclosures at the time of incorporation? For example, or at some other point? Judge Jordan, did you say going forward, when is disclosure required at the time of formation or at some other point, as like as a matter of how the statute operates? Is that your question? Yes, that's exactly the question. Thank you, Your Honor. So it depends when a corporation is formed. If it was formed before 2024, as is true of most corporations, they won't have to file their reports until the very end of this year, January 1, 2025. For corporations formed this year, I believe it's within 90 days of their formation and operation. And for corporations formed after January 1, 2025, I believe it's 30 days. So it would be highly unusual. When you say 30 days, you mean 30 days from the date of incorporation? Is that what you're saying? That's right, Your Honor. And then are there, remind me, are there continuing disclosure obligations even for after-formed corporations? That's right, Your Honor. There's an ongoing requirement and some circumstances when their ownership does change. Change of ownership or something. And that's consistent with our argument that this isn't sort of focused on formation. It's focused on corporations. It's focused on businesses. OK, good deal. All right, so you've got three minutes of rebuttal time remaining. Mr. Lee, let's hear from you. Thank you, Judge Newsom, and may it please the court. My name is Thomas Lee of Hughes, Hubbard & Reed, and I represent the plaintiffs, Isaac Winkles and the National Small Business Association. Our friends in the government have fundamentally mischaracterized what the CTA has written and implemented by the agency's regulations does. Can I ask you just what in my mind is a threshold question is the question that we asked you guys about for supplemental briefing. Will you talk to us about the facial nature of the challenge? And especially for my purposes, address our decisions in Page and Pew, which the supplemental brief didn't address, which seemed to me as I read them to apply the same old standard to enumerated powers challenges. Yes, Your Honor. Our position in this facial challenge is that this statute, the CTA as written, has no constitutional applications. The decisions of this court, including Judge Brasher's decision in the Pew case involve statutes that had jurisdictional elements that specified affecting interstate commerce, which this one, this particular statute does not. The government continues to insist that this statute regulates commercial entities and businesses. But if you look at the statute and going forward from January 1st, you have to report within 30 days of formation. It's clear that what this statute does is it's seeking to track any person who sets up a legal entity and require that person to disclose personal information by virtue of having set up that entity. There's no requirement under the statute of any commercial activities. I think the government presumes that if you set up an entity, you're engaging in business, but that nothing could be farther from the truth. There are many instances where people set up entities, including my own clients that are actually not conducting any active business. They just set up the entity. They have an idea. They came up with a unique corporate name. They have an idea to do something. They're just sitting there. And the reality is, under this statute, they have to report within 30 days. So anyone who sets up- So on that, I'll say, I think that's your best sort of hypo is just the businesses that are set up and just sort of just sit there. Why doesn't, there's an exclusion in the act for corporations, limited liability corporations and other entities that exist for over a year that's not engaged in the active business, that's not owned by a foreign person, and that hasn't experienced a change of ownership. There are so many different sections and subsections. It is XXIII, I take it to be 23. Why doesn't that solve that problem by accepting those from this act? So Judge Brasher, that exception, the inactive entity exception, the agency has actually construed that within one year provision to be within one year of the enactment of the statute. So you have to have been in existence before January 1, 2020. So it's not out of play for with respect to entities that have been formed since then. And the reality is, the way a corporation is formed, you pick a unique name, you file a principal place of business, you file the name of an organizer, the address of an organizer. I'm talking about Alabama corporate law. And then afterwards, you may, in the corporate documents, divide up ownership shares. It might be used to hold a property or something, and that inactive entity exception XXIII would still apply in that instance. So there's two reasons why the inactive entity exception, so far as the government has interpreted, would not apply to many of these instances where you have somebody setting up a business entity that hasn't actually engaged in business. But I wanted to focus on the other part of this statute, which is problematic. So if anyone sets up a separate legal person or entity interstate law, is presumed to be a criminal suspect where the personal information must be turned over to FinCEN for its criminal law enforcement database. And that database can be accessed by federal and foreign law enforcement agencies and intelligence agencies without any court authorization, without a warrant, without a reasonable suspicion, or any basis to suspect wrongdoing. And that's not only a commerce clause violation, because it encumbers state control over entity formation. It's triggered by the act of forming an entity, which is not a commercial activity as we reasoned. It's also a Fourth Amendment violation because it affects an unreasonable search of citizens who have set up legal entities without a warrant, without a reasonable suspicion, or any basis to suspect wrongdoing or recognize exception for generalized law and personal... That Fourth Amendment argument seems like it's, well, I don't want to belabor the point on this, but it just seems really far reaching because there's all sorts of regulatory provisions and disclosure provisions that require you to disclose if you're going to engage in certain activity. We've said, I think, in previous cases that the Fourth Amendment is really implicated where the government has like an individualized search for crime solving purposes. That seems to be a problem for your Fourth Amendment argument. Well, Your Honor, it is true that the Fourth Amendment allows the government to conduct searches for law enforcement purposes, but all of those cases involve specific law enforcement purposes, not this kind of general law enforcement database that different people could, different agencies could access for different reasons. I mean, I think the closest brick and mortar precedent might be Indianapolis versus Edmonds, where the Supreme Court said you might be... Police might have a valid search under Fourth Amendment purposes for sobriety check or border check, but some kind of roving roadblock for drug enforcement crime purposes would be unconstitutional. So I think that the CTA affects in the digital space through the mechanism of FinCEN's database, that sort of particular kind of general criminal law enforcement search, which the Supreme Court has held unconstitutional in the brick and mortar sense. If you permit me to continue a little bit about the government's arguments and under the necessary improper clause, one of the arguments that they make is, well, Congress has determined that this statute is necessary, but nothing could be farther from the truth because there is actually, as we've briefed, a 2016 CDD rule, the Customer Due Diligence Rule, which applies to banks and financial institutions. And so the ultimate purpose of this statute is to deter money laundering. What more logical measure to take for that end to actually trace money laundering? And this allows me to revert to something that my friend from the government said. The government says, well, this is just another anti-money laundering statute. And the reality, however, is that the prior initiatives all acted on the banks and the financial institutions. And with respect to persons, the one aspect of the prior regime that involved individuals that Schultz upheld involved foreign financial transactions in excess of $5,000. And so this is a very different, new kind of measure. Yes, it's part of the government's initiatives to track money laundering, but it acts upon anybody who set up a corporation. That's not the banks or the regulated industries or people who are traveling across borders with large amounts of financial instruments, which is the nature of the prior regulations. And so just by calling it part of the Anti-Money Laundering Act, I think the government is putting the cart before the proverbial horse here. So let me ask you a necessary and proper question. So, you know, so I assume that you don't dispute that the government has sort of general commerce clause authority to do things, you know, to fight tax evasion and to fight foreign terrorist financing and money laundering. And then my recollection is that the district court says, fine, but this new statute isn't, I think, in his word, essential and thus fails necessary and proper analysis because of the rule that you cited earlier. Isn't that just, though, kind of like in the teeth of McCulloch? I mean, like McCulloch doesn't McCulloch sort of affirmatively reject the essentiality analysis of necessary, right, and says convenient, useful, whatever. So what do we do with that? Yes, Your Honor. McCulloch does use expansive language on this particular point, but I think the most recent precedent from the Supreme Court is 200 years younger, and that's Amphib versus Sebelius. And Amphib versus Sebelius on this precise point, Your Honor, Chief Justice Roberts says that basically you can use, number one, the necessary and proper clause can't swallow up Article I powers. It's not a blank check. You can't do something that you couldn't do. Number two, he explains that with regards to cases like Comstock or prior cases, he says, and I'll quote directly, that the individual mandate by contrast best Congress with the extraordinary ability to create the necessary predicate to the exercise of an enumerated power. I think I would submit that that's precisely what's going on here. Congress doesn't have any pre-existing authority to allow entity formations within the states. That's a state prerogative. And so Amphib stands for the proposition that you have to have to if Congress wants to regulate something in the necessary and proper clause, it has to have some federal predicate in advance to allow that to happen. In Comstock, we're talking about mentally ill, sexually dangerous prisoners that are already in federal custody. And the other point of distinction is if you look at a statute like Comstock, in order for the federal government to continue holding these sexually dangerous, mentally ill people in prison, the statute required the federal government to ask states first whether they would incarcerate them. And that's a critical part of this analysis. Has there been, in the interest of federalism, some acknowledgment of the roles of the states? States, they're absolutely irrelevant to this statute. There's no ability for the states to ask for exemptions for certain kinds of entities that they've created. Congress, Judge Brasher, is the one that dictated the 24 exemptions in Roman letters, lowercase Roman letters. There's no room for the states to participate or to collaborate in this scheme. And the obligation falls entirely on them. So in some sense, I think even under the necessary and proper analysis, what the government has done here with regards to the CTA, what Congress has done, exceeds the beyonds of McCulloch. Let me ask you this, because I think you mentioned something that I kind of want to follow up on. It's been something I've been thinking about, which is, let's say that instead of trying to do this, where Congress said, if you form these entities, let us know who you are. You've got to follow these forms. What if Congress said, we've had serious trouble with people using these entities for money laundering, for terrorism, for all sorts of stuff. We actually don't like the way the states have been regulating commercial corporations. We hereby preempt all state laws on the formation of business entities. And going forward, if you want to form a business entity, you have to form it with the office of the Treasury, the Department of Treasury. Would that be within Congress's Commerce Clause power? That's not the case, but I believe it would not be,  I mean, given the long history- I think your position suggests that would not be. That's right. I mean, state entity formation, and the government hasn't responded to our arguments about the long history of entity formation being something that was considered a state sovereign power. The reason why you would say that that is not in Congress's Commerce Clause power is not because it's not a regulation of commerce, but because there's this historical state ability to allow entities to be formed and whatnot. I think it would be a combination of both arguments. The original understanding, the original meaning of the Commerce Clause probably did not incorporate a sense of being able to charter private separate legal persons or to encumber the state's ability to do so under the Commerce Clause. I mean, Congress sort of did that with banks, though, didn't they? I mean, they said, look, if you're going to have a bank, you've got to do this. I mean, Judge Brasher, banks are in the business of conducting financial transactions and enabling money to cross interstate borders. I mean, I think that returns to the fundamental disagreement we're having with the government. The government looks at the statute and thinks it's regulating commercial entities and they neglect the fact that the statute, as it's written, and all the guidance that the agency has given about it, it makes absolutely plain that what it's regulating is any person who sets up an entity for whatever reason, doesn't have to do anything, has to report as of January 1st, 2025. If they do it afterward, they have 30 days to do so. And as we pointed out in one of our 28J filings, if you set up the entity and don't do anything with it, you still have to report to FinCEN. They're trying to find a database. What they've done is they've effectively made anyone who sets up an entity under state laws a criminal suspect or presume that that to be sort of an unlawful act. And in the amicus brief, it's interesting because the findings, and they keep pointing to these findings, and the findings which are emphasized, for example, in the amicus brief filed by Senators Warren, Wyden and Whitehouse, the findings say, well, there have been all these instances where shell corporations have been used for nefarious ends. And there may indeed be dozens and hundreds of those instances. But FinCEN by its own admission, so there are 32.6 million entities in existence. And every year, this statute will drag in 5 million more. What we don't see in the findings is what's the percentage of these bad apples, these shell corporations, as opposed to the millions of instances where law-abiding citizens set up entities for all kinds of reasons, including business, that have no unlawful aspects. I see my time is up. Mr. Lee, thank you very much for your presentation. Oh, Judge Jordan has communicated to me that he's been disconnected. And so we'll listen after the fact. And we'll conference him in. So Mr. Hazel, you have three minutes of rebuttal time remaining. Thank you, Your Honor. Three quick points. Judge Brasher, on your first hypothetical about a corporation that forms and then sits there and does nothing, it's hard to understand why someone would form a corporation and do nothing for 30 or 90 days. It's obviously their burden to support their facial attack on this act of Congress. They haven't provided those reasons that haven't identified a corporation that does that. In any event, the Supreme Court has said, again, including recently in Rahimi, that the way to analyze these facial challenges is not to sort of focus on the wacky hypotheticals. It's a focus on the places where the statute is most likely to be constitutional. We've identified many of those. That should be the end of their facial challenge. On the necessary and proper piece of the argument, this is not sort of an extraordinary assertion of congressional power. This is a reporting requirement for businesses. It's hard to think of many areas where Congress has regulated more often than businesses that often takes the form of reporting requirements. As you can see from the exceptions in the CTA, banks, financial institutions, insurers, the list goes on and on. This is not something novel. It's something that Congress does all the time. That's why it's very different than NFID. That was an extraordinary assertion of federal power. The Supreme Court understood the statute there as compelling people to engage in economic activity who didn't want to. This is a reporting requirement. On the CDD rule, I mean, the standard is not absolutely necessary. It's conducive or useful. This is a pretty deferential review. Here, Congress looked at this particular 2016 rule, made some changes to it, and determined that these reporting requirements were still needed. That's because there are significant differences in the scope of that rule and these reporting obligations created by the statute. I'm happy to answer any questions on the Fourth Amendment that there may be. In our view, this falls comfortably within the kind of reporting requirements that are... Just a quick question on that. I thought, I mean, is your... You think we should just remand that to the district court, though, right? I mean, if we... I mean, the district court didn't address that. If we find that this is a constitutional exercise, we'll just answer that, I guess. We don't have a strong view whether this court addresses it in the first instance or sends it back to the district court. It's obviously correct that the district court didn't get into it. Whoever does decide it, our view is that this is just... This is straightforwardly not a Fourth Amendment concern. I mean, it's striking that the other side focuses on cases about stop and frisk and drug checkpoints and something like that. This case, obviously, is very different. It's a reporting requirement involving a limited amount of information. I'm happy to answer any other questions that the court may have. Okay, hearing none. Very well, that case is submitted and court is adjourned for the week. All rise.